UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UTICA ENTERPRISES,**

       **Plaintiff,**            **CIVIL ACTION NO. 01-CV-74655-DT**

     **vs.**              **DISTRICT JUDGE ANNA DIGGS TAYLOR**

**FEDERAL BROACH AND**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**MACHINE CO.,**

       **Defendant.**
_____/

**ORDER GRANTING DEFENDANT'S 13(f) and 15(a) MOTION TO AMEND
ANSWER TO ADD A COUNTERCLAIM AND AFFIRMATIVE DEFENSE,
GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY,
AND GRANTING PLAINTIFF'S MOTION TO COMPEL DEFENDANT
TO RESPOND TO INTERROGATORY NO. 8 AND PRODUCE DOCUMENTS
REQUESTED IN REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5**

**I.   Procedural Background**

Plaintiff filed this case in December, 2001 alleging that Defendant had infringed on U.S. patent No. 6,256,857 ("the 857 patent"). Defendant filed its answer in January 2002. Discovery proceeded through 2002 and early 2003. On January 15, 2003 the Honorable Anna Diggs Taylor held a *Markman* patent claim construction hearing. Judge Taylor issued a Memorandum Opinion and Order on April 15, 2003. Based on the construction of the patent claim given by the Court in that opinion, the parties stipulated to an order of non-infringement, which was reduced to judgement on September 11, 2003.

Plaintiff filed a notice of appeal to the United States Court of Appeals for the Federal Circuit on October 10, 2003. The Federal Circuit entered an order reversing certain aspects of the District Court's claim construction on August 19, 2004. The case lay dormant for several months following the Federal Circuit's opinion. On June 23, 2005 the parties entered a Stipulated Order of

Substitution of Counsel for Defendant. On August 17, 2005 the Court held a status conference and issued a new scheduling order which included a discovery cutoff of November 17, 2005. Defendant filed its Motion to Compel Discovery on October 13, 2005, and its Motion for Leave to Amend on October 17, 2005. Plaintiff filed its Motion to Compel Discovery on November 14, 2005. The District Court referred these motions to the undersigned for hearing and determination pursuant to 28 U.S.C. 636(b)(1)(A) in orders of reference dated November 1, 2005 and November 18, 2005. After Responses and Replies were filed, the parties presented oral argument on all three motions on December 13, 2005.

## II.     Defendant's Motion for Leave to Amend

Defendant's motion for leave to amend is based on facts Defendant first discovered during the September 13, 2005 deposition Robert Roseliep, the inventor of the 857 patent. Mr. Roseliep has been deposed three times in connection with this case, and he also testified at the January 15, 2003 *Markman* hearing. Defendant argues that Mr. Roseliep's testimony establishes that that Plaintiff failed to disclose certain information during the patent application process. Defendant argues that this failure to disclose forms the basis for a counterclaim of inequitable conduct and an affirmative defense of patent unenforceability due to inequitable conduct. Defendant claims to have first discovered this testimony during the week of September 26, 2005, two weeks after Roseleip's September 13, 2005 deposition, (two years after his September 2003 deposition, and three months after current defense counsel's June 23, 2005 record appearance).

A party wishing to add an omitted counterclaim to its answer must do so in accordance with Fed. R. Civ. P. 13(f), which provides:

> When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

When a party wishes to amend its answer to add an affirmative defense must do so in accordance with Fed. R. Civ. P. 15(a), which provides in pertinent part that:

> a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The decision to grant leave to amend is discretionary and may depend on several factors including: a finding of bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff argues that it will have to conduct substantial additional discovery on the newly added affirmative defense and counterclaim if leave to amend is granted, and that Defendant has not shown a "good reason" that the motion for leave to amend is being offered several years after the facts underlying the motion became apparent. Neither of Plaintiff's arguments is sufficient or persuasive. Plaintiff merely alleges that the amendment would force it to now litigate the new affirmative defense and counterclaim, but Plaintiff has failed to establish prejudice, unfair disadvantage, bad faith, repeated failure to cure deficiencies by previous amendments, or otherwise. The newly substituted lawyers showed no lack of diligence in moving to amend the Answer after appearing in the case. Thus any delay appears to be excusable. The potential prejudice to Defendant from not allowing an amendment substantially outweighs any prejudice to Plaintiff resulting from amendment. Defendant's Motion for Leave to Amend is **GRANTED**.

### III. Defendant's Motion to Compel

Defendant moves to compel Plaintiff to provide supplemental answers to Interrogatories numbers 3, 7, 8, and 20, and additional documents in response to Requests for Production of Documents numbers 4, 5, 14, 15, 31, 36, 37, 38, 39, 40, 41, 42, and 44.

**Interrogatories Nos. 3 and 7**

In its Response to Defendant's motion, Plaintiff answered that supplementation of its Interrogatory responses would be forthcoming. The Joint Statement of Resolved and Unresolved Issues suggests that Plaintiff has sent to Defendant letters supplementing Plaintiff's responses to Interrogatory 3 and Interrogatory 7, but has not verified these supplemental responses as required by the Federal Rules. Plaintiff has not presented any reason why it should not verify its supplemental responses.

Defendant's Motion is **Granted** with respect to Interrogatories Nos. 3 and 7. Furthermore Plaintiff will obtain the signatures of Steven Roseliep and Stephan Wanzcek to verify their responses to these Interrogatories within ten days of the date of this order.

**Interrogatory 8**

Defendant's Interrogatory 8 seeks a "claim chart" in which Plaintiff must list the specific basis for its allegations of infringement under the patent claim construction provided by the Federal Circuit. Plaintiff admits that it was initially required to produce a claim chart in response to this interrogatory, (and indeed did produce a claim chart prior to the Federal Circuit's order reversing portions of the original claim construction), but argues that it has no duty to supplement it now. Plaintiff argues that its duty to supplement will be triggered, if at all, by the deadline for submitting expert reports under Fed. R. Civ. P. 26(a). Plaintiff also argues that a supplemented claims chart would be cumulative, because at least some of the information contained in the supplemented claims chart either would have been discovered prior to the Federal Circuit's August 19, 2004 decision.

Plaintiff's argument is not well founded. Plaintiff has an ongoing duty to supplement its discovery responses as the case proceeds. Plaintiff may not rely on the Fed. R. Civ. P. 26(a) timeline

for expert reports because Defendant's Interrogatory does not seek an expert report, and there is no provision of the Federal Rules suggesting that discovery may not be had merely because its subject matter will later be addressed in an expert report. Even if ongoing discovery were to render information contained in a the original claim construction chart cumulative, discovery under a post-August 19, 2004 claim construction does not. Defendant's Motion to Compel is **Granted** with respect to Interrogatory 8.

**Requests for Production of Documents Nos. 5, 14, and 15**

Plaintiff objected to Interrogatories 5, 14 and 15 on grounds of attorney client privilege, but failed to provide a privilege log. Defendant's Motion seeks an order that Plaintiff produce a privilege log. Plaintiff's Response to Defendant's Motion states that Plaintiff will provide a privilege log for these Requests for Productions, but no privilege log has been produced to date.. Defendant's Motion to Compel is **Granted** with respect to Defendant's Requests for Production of Documents Nos. 5, 14, and 15. Plaintiff's will produce a privilege log within ten days of the date of this order.

**Requests for Production of Documents Nos. 36, 37, and 44[1]**

Plaintiff claims it has produced all documents responsive to Defendant's Requests for Production Nos. 36, 37 and 44. Defendant claims that there are documents in Plaintiff's possession which are relevant to these requests which Plaintiff has failed to produce. Defendant claims Plaintiff has refused to produce documents in its possession because said documents were originally generated by third parties. This is a straightforward factual dispute. Assuming that Defendant's

---

[1]Plaintiff objects to part of Request 44 on the grounds of relevance. As discussed below Plaintiff's relevance objection is not well founded.

allegations are true, then Defendant is entitled to an order to compel disclosure of the subject documents.

### Requests for Production of Documents Nos. 4, 31, 38, 42, 43, and (more discussion of) 44 and Interrogatory 20

Plaintiff claims that these requests, which seek information about Plaintiff's sales, costs, prices, profits, and corporate finances, are irrelevant as a matter of law. Plaintiff claims it is proceeding under a "reasonable royalty" theory of damages only, rather than a lost profits theory. Plaintiff argues that this choice of theory should limit discovery.

FED. R. CIV. P. 26(b)(1), discovery may be had "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . if the information sought appears reasonably calculated to the discovery of admissible evidence." Plaintiff's corporate financial information is relevant to several of the factors the parties may point to in attempting to prove the amount of a "reasonable royalty" in this case. The seminal case on calculating damages under the "reasonable royalty" theory is *Georgia Pacific Corp. V. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The *Georgia Pacific* court identified the "reasonable royalty" as seeking the result of a hypothetical fair and successful license agreement negotiated between the two parties. *Id.* The Court went on to list sixteen specific factors for courts to consider in calculating "reasonable royalty" damages. Among those factors are:

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

*Id. See also Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 1379 (Fed. Cir. 2005); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed.Cir. 2001); *Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 286, 288 (W.D. Mich. 1995).

Plaintiff's sales records, costs, pricing structure, marketing expenses, and general financial records are relevant to the hypothetical inquiry the trier of fact must eventually make to determine the "reasonable royalty" associated with Defendant's alleged infringement of its 857 patent. Even if Plaintiff is explicitly not asserting a "lost profit" theory, the potential profit to Plaintiff and Defendant stemming from the sale of the patent remains part of the subject of this action. Defendant's Motion to Compel is **Granted** as to production requests Nos. 4, 31, 38, 42 and 43.

**Plaintiff's Motion to Compel Defendant to Respond to Interrogatory 8 and to Produce Documents Requested in Request for Production of Documents No. 5**

Plaintiff's Interrogatory 8 and Request for Production of Documents No. 5 seek information about Defendant's sales of items not covered by the 857 patent. At this point it becomes necessary for this Court to discuss what the 857 is and what it does. A broaching machine basically functions as a floor stand for the broaching tools used to machine metal. The broaching machine is designed to hold the "holder," which in turn holds the "broaching tool." Broaching machines can hold several different types of holders. Each holder is designed for a specific type of broaching tool. The broaching tools cut or "broach" the metal. Not surprisingly, broaching tools wear out rather

quickly, and have to be replaced frequently. Without a broaching machine and a holder, a broaching tool is useless. Defendant claims that its broaching machines cost more than a hundred thousand dollars each, while its broaching tools sell for approximately seven hundred dollars each.

The 857 patent is a method patent for assuring that the broaching tool stays properly aligned with the tool holder during operation. Plaintiff's discovery requests seek information concerning Defendant's sales of non-patented broaching machines, on the theory that profits from these sales may be included in the calculation of damages under the "entire market value rule."

When a patentee seeks damages on non-patented components sold with a patented apparatus, courts have applied a formulation known as the "entire market value rule" to determine whether such components should be included in the damage computation. *Rite Hite Corp. v. Kelly Co., Inc.,* 56 F. 3d 1538, 1549 (Fed. Cir. 1995). The *Rite-Hite* Court identified limits on the total market value rule, holding that, even when two products are sold together, the portion of the sale price attributable to the non-patented product is not part of the compensation base when the two products have "no functional relationship." Specifically, the *Rite-Hite* Court found that a "dock leveller," a device that bridges the gap between a loading dock and a truck, and a "vehicle restraint," which locks a truck against a loading dock were functionally independent because they "did not function together to achieve one result" each could effectively have been used" without the other.

Defendant argues that the broaching machines fall outside of the "entire market rule" because they can function without the holder and broaching tool covered by the 857 patent. Defendant's argument fails. The 857 patent cannot achieve its function without the holder and broaching tool being held by a broaching machine; it is functionally dependent upon the broaching machine. "The entire market value rule has typically been applied to include in the compensation base unpatented components of a device when the unpatented and patented components are

physically part of the same machine." *Rite Hite* at 1549. *See aslo, e.g., Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1361 (Fed.Cir.1999) (affirming a judgment wherein a jury awarded damages based on the entire market value rule and the functional relationship between patented fans and unpatented radiator and condenser assemblies); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 72 F.3d 857, 868 (Fed.Cir.1995), vacated on other grounds, 520 U.S. 1111, 117 S.Ct. 1240, 137 L.Ed.2d 323 (1997) (sustaining the jury award of damages based on the lost sales of accessory items sold with and having a functional relationship to patented magnetically coupled rodless cylinders).

Plaintiff is entitled to discovery relating to Defendant's sales of broaching machines, and its motion therefore is **GRANTED**.

**IT IS SO ORDERED.**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: January 13, 2005              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: January 13, 2006              s/ Lisa C. Bartlett
                                     Courtroom Deputy